## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| ROGER PUSHOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Docket No. 2:17-cv-354-NT |
| | ) |
| MOUNT WASHINGTON | ) |
| OBSERVATORY, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

The Defendant moves to dismiss this suit pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (ECF No. 5.) Roger Pushor, a Maine resident, has alleged that the Defendant, the Mount Washington Observatory ("the **Observatory**"), violated Maine's wage payment and overtime laws and the Federal Fair Labor Standards Act. The Observatory, a New Hampshire nonprofit corporation, contends that it has only negligible contacts with the neighboring state of Maine. Upon careful consideration, I agree and **GRANT** the Defendant's motion.

## JURISDICTIONAL FACTS

Following the prima facie review standard for a Rule 12(b)(2) motion, I accept specific facts alleged by the Plaintiff to the extent that the record supports those assertions.[1] I take the Plaintiff's "properly documented evidentiary proffers as true

---

[1]      District courts may choose among several methods for determining whether the plaintiff has met her burden, including the prima facie method, the preponderance of the evidence method, and the likelihood method. "[T]he least taxing of these standards from a plaintiff's standpoint, and the one most commonly employed in the early stages of litigation, is the prima facie standard." *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 n.5 (1st Cir. 2016) (quoting *Rodriguez v. Fullerton Tires Corp.*,

and construe them in the light most favorable" to the Plaintiff. *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016). I also consider undisputed, supported facts offered by the Defendant. *Id.*

The Observatory is a New Hampshire nonprofit that maintains a weather station at Mount Washington's summit in New Hampshire, as well as a base in Gorham, New Hampshire, and a Weather Discovery Center in North Conway Village, New Hampshire. Shilling Aff. ¶ 3 (ECF No. 5-1). On July 1, 2011, the Observatory sent Pushor a letter to his home in Falmouth, Maine confirming his employment as a year-round Weather Observer/IT Specialist. Pl.'s Ex. A at 2 (ECF No. 8-2); Pl.'s Ex. B (ECF No. 8-3). The job description for the Weather Observer position describes an "[e]ight day shift at the summit facility, each day typically broken into two twelve hour shifts including a total of two hours of break time." Pl.'s Ex. A at 6. The IT Specialist job description also discusses "technology-related tasks on the summit of Mount Washington during his/her shift." Pl.'s Ex. A at 8.

For the first two years of his employment, Pushor travelled to Mount Washington to perform his duties as a Weather Observer/IT Specialist, where he performed weather observation, participated in research and education programs, and had primary responsibility for summit technology. Pushor Aff. ¶ 3 (ECF No. 8-4); Schilling Aff. ¶ 22.

---

115 F.3d 81, 83-84 (1st Cir. 1997). "Unlike the prima facie method," the other two alternatives "generally require an evidentiary hearing." *Id.* Neither party has requested such a hearing in this case, and so I proceed on the prima facie method.

In the spring of 2013, the Observatory shifted Pushor's job responsibilities away from weather observation and increased his role with IT and the Observatory's transition to a new website. Pushor Aff. ¶ 4; Pl.'s Ex. B; Schilling Aff. ¶ 23. Because he could perform his IT duties from home, Pushor was not required to commute to Mount Washington. Pushor Aff. ¶ 4; Schilling Aff. ¶ 25. Pushor began working from his home in Falmouth, Maine, connecting to the Observatory through its New Hampshire-based network. Schilling Aff. ¶ 25. Pushor also physically reported to the New Hampshire facilities approximately once a month. Schilling Aff. ¶ 6. Pushor's supervisor and coworkers remained in New Hampshire. Schilling Aff. ¶ 27. His email listed his business address as the Observatory's Weather Discovery Center in North Conway, New Hampshire. Schilling Aff. ¶ 27. The Observatory paid employment taxes in Maine for the period that Pushor telecommuted from Falmouth. Schilling Aff. ¶ 30.

The Observatory's new website was launched in January 2015. Schilling Aff. ¶ 24. After the launch of the new website, there was confusion as to Pushor's status with the Observatory. Pl.'s Ex. B at 2.  In an email string dated February 20, 2015, involving the Observatory's Business Manager, Linda Cryan, Peter Gagne[2] writes:

> He was hired as a summit observer, was taken off summit specifically for the website, with, I thought, the intention he would return when website was done. I don't think that was his intention looking back on it now, and he has told me he has no interest in returning. So his position is actually a new one. I don't know how it was categorized, if it even was.

Pl.'s Ex. B at 2.

---

[2]     It is unclear from the record what role Peter Gagne had at the Observatory.

On July 15, 2016, the Observatory notified Pushor that he needed to physically report to work at the Weather Discovery Center in North Conway, New Hampshire, beginning July 18, 2016. Schilling Aff. ¶ 32. Pushor did not report until July 26, 2016. Schilling Aff. ¶ 33. He then failed to report on July 27, 2016, and he telecommuted the week of August 1, 2016. Schilling Aff. ¶¶ 34-35. Pushor again failed to report to the Weather Discovery Center on August 5, 2016. Schilling Aff. ¶ 36. On August 8, 2016, the Observatory told Pushor that if he did not resign, his employment would be terminated. Schilling Aff. ¶ 37.

## LEGAL STANDARD

On a motion to dismiss under 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction exists over the defendant. *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936); *A Corp.*, 812 F.3d at 58. "[T]he inquiry is whether [the plaintiff] has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Id.* "The *prima facie* showing of personal jurisdiction must be based on evidence of specific facts set forth in the record. The plaintiff must go beyond the pleadings and make affirmative proof." *Boit v. Gar-Tec Prod., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) (internal citations and quotations omitted). The court need not "credit conclusory allegations or draw farfetched inferences." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

## DISCUSSION

The Due Process Clause of the Fourteenth Amendment "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). A nonresident defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co.*, 326 U.S. at 316.

To survive a 12(b)(2) motion, a plaintiff must meet the requirements of both the applicable state long-arm statute and the Due Process Clause.[3] Maine's long-arm statute "assert[s] jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause" of the Fourteenth Amendment. 14 M.R.S. § 704-A(1). Although Maine does have a slightly different formulation of a three-part test for personal jurisdiction, it "substantially overlaps the federal standard," such that courts may proceed on the due process analysis alone. *LP Solutions, LLC v. Duchossois*, No. 2:18-cv-25-DBH, 2018 WL 1768037, at *4 n.11 (D. Me. Apr. 11, 2018); *see also Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005); *New Life*

---

[3]     Federal courts adjudicating a personal jurisdiction dispute must satisfy state law because they are the "functional equivalent of a state court sitting in the forum state." *Baskin-Robbins Franchising, LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016).

*Brokerage Servs. Inc. v. Cal-Surance Assocs., Inc.,* 222 F. Supp. 2d 94, l0l (D. Me. 2002).

Under the Due Process Clause, personal jurisdiction over a defendant "can come in the form of general or specific jurisdiction." *Bluetarp Fin., Inc. v. Matrix Const. Co.,* 709 F.3d 72, 79 (1st Cir. 2013). To exercise general jurisdiction over a non-resident defendant, that defendant must have continuous and systematic contacts with the forum state. *Id.* "General jurisdiction 'broadly subjects the defendant to suit in the forum state's courts in respect to all matters,' regardless of whether the matter before the court has anything to do with the defendant's contacts with this state." *Id.* (quoting *Cossaboon v. Maine Med. Ctr.,* 600 F.3d 25, 31 (1st Cir. 2010)). In contrast, specific jurisdiction "depends on an "affiliatio[n] between the forum and the underlying controversy." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted) (alteration in original)).

In this case, Pushor makes only the more narrow argument for specific jurisdiction.[4] Pl.'s Opp'n 3 (ECF No. 8). The "legal elements of minimum contacts analysis in specific jurisdiction cases are, in the conventional jargon, relatedness, purposeful availment, and reasonableness." *LP Solutions*, 2018 WL 1768037, at *5 (citations omitted).  As articulated by the First Circuit, to determine if specific jurisdiction exists a court must examine:

---

[4]      Although Pushor claims that general jurisdiction also exists, he makes no attempt to demonstrate how. I consider any general jurisdiction claim waived. Pl.'s Opp'n 3 (ECF No. 8).

6

> (1) whether the claim "directly arise[s] out of, or relate[s] to, the defendant's forum state activities;" (2) whether the defendant's in-state contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable;" and (3) whether the exercise of jurisdiction is reasonable.

*A Corp.*, 812 F.3d at 59 (quoting *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir.2014) (alterations in original). If the plaintiff proceeds under a specific jurisdiction theory, the court must be satisfied that all three prongs are met. *Id.* at 20. If the plaintiff satisfies the first two prongs, then the defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477.

## A.    Relatedness

The relatedness criteria requires that the claim "directly arise out of the specific contacts between the defendant and the forum state." *Baskin-Robbins Franchising, LLC*, 825 F.3d at 35 (quoting *Sawtell v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995)). Relatedness "serves the important function of focusing the court's attention on the nexus between a plaintiff's claim and the defendant's contacts with the forum." *Id.*

Pushor argues that this suit is related to the Observatory's contacts with Maine because it "is based upon the hours the Observatory permitted Pushor to work, knowing that work would be done in Maine." Pl.'s Opp'n 4. But Pushor provides no evidence about the Observatory's alleged failure to pay overtime that would help me determine whether his claims arise out of the Observatory's Maine contacts. Pushor's one-page affidavit states that he worked from home starting in 2013, but it provides

no detail about the work he claims was undercompensated. Pushor Aff. ¶ 4. Indeed, the only instance of failure to pay overtime that Pushor articulates is found in the Complaint, where he asserts that he "would not be paid for his travel time to locations on Mount Washington to calibrate and/or maintain equipment." Compl. ¶ 24. Likewise, Pushor alleges that the Observatory failed to pay him "for all hours worked as required by 26 M.R.S. § 629 by engaging him in non-compensatory activities for the benefit of the employer, including but not limited to traveling to the summit of Mount Washington." Compl. ¶ 30.[5] Without more information about the claim, I am at a loss to find that it relates to the Observatory's contacts with Maine.

Pushor turns to *Yocum v. Rockwell Medical Technologies, Inc.* for support. *See* No. 12-cv-568, 2012 WL 2502701 (S.D. Cal. June 27, 2012). In *Yocum,* a California court found that it had personal jurisdiction over a biopharmaceutical company headquartered in Michigan in a suit brought by a doctor hired as the company's Vice-President of Drug Development and Medical Affairs, who worked primarily from California. The plaintiff claimed that he advised, warned, and ultimately challenged the CEO of Rockwell about problems with a particular drug that was in development and that he was fired because he refused to stand down to the CEO, who continued to tout the drug publically. The plaintiff asserted claims for wrongful termination, intentional infliction of emotional distress, and unpaid wages under state law. On the

---

[5]    If Pushor is describing driving around the Observatory's three facilities, that work happened in New Hampshire, not Maine. If instead Pushor is describing driving to Mount Washington from Falmouth, he seems to be describing his commute, which, as the Observatory notes, is not generally compensable. *See* Def.'s Reply 2 n.1 (ECF No. 9).

issue of relatedness, the court noted that the employer's forum-related activities included:

> employing Plaintiff, allowing him to telecommute from home, maintaining this connection to California continuously for two years and eight months, and finally terminating Plaintiff. These contacts were the result of the employment relationship between Plaintiff and Rockwell, and all of Plaintiff's claims arise from that relationship. As a result, his claims arise out of Rockwell's activities in the forum, as Plaintiff would not have suffered injury but-for his employment relationship with Rockwell.

*Id.* at *6.

Although at first blush, *Yocum* seems to support a finding of relatedness here, the case is distinguishable. In *Yocum*, the court was focused on the employer-employee relationship. Rockwell hired Dr. Yocum knowing that he would work from California, and presumably it did so because it wanted his talent, despite the fact that he was in California. The case primarily involved Dr. Yocum's termination in retaliation for Dr. Yocum's "continued objections to Rockwell's improper activities." Id. at *5. The court concluded that the plaintiff satisfied the relatedness criteria because the claims arose out of the employer-employee relationship, and the relationship constituted the employer's activities in California. *Id.* at *6.

Here, in contrast, the Observatory's contacts with Maine that are relevant for a specific jurisdiction analysis are that it permitted the Plaintiff to work in Maine for over two years. Pushor is not making the claim that the Observatory established an employment relationship with him, knowing that he would be working from Maine because it so valued his talent. Pushor is only asserting that his wage claims are related to the Observatory's decision to allow him to work for a time in Maine. And,

without more information about the claimed overtime violations (particularly given that the overtime violations mentioned in the Complaint appear to have occurred in New Hampshire), I cannot conclude that Pushor's claims arise out of or relate to the Observatory's activities in the state of Maine. Pushor has failed to meet his burden on relatedness.

### B.    Purposeful Availment

The second specific jurisdiction prong focuses on "whether the defendant's in-state contacts 'represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.' " *A Corp.*, 812 F.3d at 59 (quoting *C.W. Downer & Co.*, 771 F.3d at 65). It requires that the defendant "deliberately target[ed] its behavior toward the society or economy of a particular forum [such that] the forum should have the power to subject the defendant to judgment regarding that behavior." *Baskin-Robbins Franchising, LLC*, 825 F.3d at 36 (alterations in original) (quoting *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2011)). Purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third party." *Burger King Corp.*, 471 U.S. at 475 (internal quotations and citations omitted).

Pushor argues that there is purposeful availment here because the Observatory received the benefit of Pushor's work, "and the work happened in Maine." Pl.'s Opp'n 5. Pushor continues that "[w]hether the Observatory got an extra

10

benefit from the work being done in Maine is irrelevant." Pl.'s Opp'n 5. Pushor also contends that the Observatory could have anticipated litigation in Maine because it paid Maine employment taxes for Pushor, and so it would clearly be subject to tax enforcement in Maine. Pl.'s Opp'n 6; Schilling Aff. ¶ 30. Pushor cites no authority for his purposeful availment argument. *See* Pl.'s Opp'n 5-6.

The Observatory asserts that permitting an employee to telecommute to a New Hampshire workplace is not purposeful availment of the privilege of conducting activities in the forum state. Def.'s Mot. 12-13. With regard to Pushor's tax enforcement argument, the Observatory argues that its compliance with employment tax obligations does not rise to the level of purposeful availment where Pushor is the one who chose to work in Maine, and all other employees' work and operations take place in New Hampshire. Def.'s Mot. 15.

The Observatory cites to *Eddy v. Ingenesis, Inc.*, a decision from the West Virginia Supreme Court, in which the plaintiff telecommuted from the forum state for a Texas-based corporation. No. 13-888, 2014 WL 1672939, at *1 (W. Va. Apr. 25, 2014); Def.'s Reply 3 (ECF No. 9). The plaintiff sought to pursue a state wage payment and collection claim, but the court was not persuaded that it had jurisdiction by the evidence, which included payment of employment taxes in the forum state. 2014 WL 1672939, at *1, *4. The court enumerated its reasoning as follows:

> First, petitioner did not show that respondent purposefully acted to obtain benefits or privileges in West Virginia. Second, as noted above, respondent does not transact business in West Virginia. Third, petitioner does not claim that respondent hired her because her office would be located in West Virginia. Fourth, respondent did not require petitioner to work from West Virginia. Fifth, petitioner does not offer

11

evidence of any benefit to respondent resulting from the fact that petitioner's office was located in West Virginia. Sixth, petitioner does not contest that respondent designated her as an employee at its Texas headquarters; that her e-mail signature identified petitioner's business address as respondent's headquarters in Texas; or that her work phone had a Texas phone number.

*Id.*, at *4.

In a case not cited by either party, *Cossart v. United Excel Corp.*, the First Circuit addressed whether a Kansas employer's contacts with Massachusetts were sufficient to constitute a purposeful availment of the privilege of conducting activities in the forum state. 804 F.3d 13, 21 (1st Cir. 2015). The court focused on a number of factors, including: that the company had recruited Cossart at his home in Massachusetts; that the resulting employment contract contemplated that Cossart would work in Massachusetts; that the company facilitated Cossart's work by providing office equipment; that the company registered a sales office in Massachusetts during the time Cossart was employed; and that Cossart did significant work in Massachusetts as the company foresaw he would. *Id.*; *see also Brian Jackson & Co. v. Eximias Pharm. Corp.*, 248 F. Supp. 2d 31, 36-38 (D.R.I. 2003) (personal jurisdiction found over out-of-state client of a consultant who worked out of his Rhode Island home because parties contemplated that work would be performed in Rhode Island and client urged plaintiff to conduct business out of his office in Rhode Island as a cost-saving measure for the client); *Suttie v. Sloan Sales, Inc.*, 711 A.2d 1285, 1286 (Me. 1998) (Massachusetts company availed itself of Maine when it sold services in Maine, hired the plaintiff as the sole representative in Maine in part to expand Maine market, and provided the plaintiff with a fax machine, "essentially

12

establish[ing] an office in Maine"); *cf. Yocum*, 2012 WL 2502701, at *5 (in a tort action applying the "purposeful direction" test,[6] the court found personal jurisdiction where plaintiff was hired with the understanding that he would work primarily in California for his Illinois-based employer).

Although Pushor bears the burden of establishing purposeful availment, he offers scant evidence about the Observatory's contacts with Maine. There is nothing in the record which sheds light on how the Observatory recruited Pushor,[7] whether the Observatory provided him with equipment or set up an office for him in Maine, or how frequently calls and emails or other correspondence were exchanged. Pushor does not contest that all the work he performed was for the Observatory's New Hampshire facilities, and he does not claim that he had any duties in Maine other than to remotely access the server in New Hampshire.

---

[6]     The purposeful direction test focuses on whether the "effect" of the conduct was felt in the forum state. In addition to his claims sounding in tort, Yocum brought a wage claim, and the court noted the issue of whether the purposeful direction test was appropriate for that claim. *Yocum v. Rockwell Medical Technologies, Inc.*, No. 12-cv-568, 2012 WL 2502701, at *4 n.4  (S.D. Cal. June 27, 2012) (citing *Holliday v. Lifestyle Lift, Inc.*, 2010 U.S. Dist. LEXIS 110296, *11-13 (N.D. Cal. Oct. 6, 2010) (an "FLSA violation is not easily categorized as either a contract or a tort dispute," but the defendant allegedly tortuously "masterminded the employment policy" to deny overtime)); *but see Lane v. XYZ Venture Partners, L.L.C.*, 322 F. App'x 675, 679 (11th Cir. 2009) (Under FLSA, "[w]ages are due according to principles of contract, not of tort") (quoting *Walling v. Jacksonville Terminal Co.*, 148 F.2d 768, 771 (5th Cir. 1945)); *Pavlo v. Stiefel Laboratories, Inc.*, No. 78 Civ. 5531, 1979 WL 105, at *1 (S.D.N.Y. Nov. 27, 1979) (although the FLSA does not have a "precise common law antecedent," claims are best treated as sounding in contract because they "presuppose[] a contract of employment which is deemed to incorporate the minimum wage-maximum hour provisions of the law") (collecting cases). Because Pushor has neither alleged with any specificity nor supplied evidence about the underlying conduct giving rise to the FLSA violation, I will not make the leap to the purposeful direction test or give much weight to caselaw that applies purposeful direction under distinguishable facts.

[7]     The fact that the Observatory sent his initial employment confirmation letter to Pushor's home in Maine seems a slim reed especially given that he worked in New Hampshire for the first two years of his tenure with the Observatory.

Further, Pushor claims that his working in Maine benefitted the Observatory. Pl.'s Opp'n 2. That claim is unsupported.[8] Although the Observatory may have tolerated the telecommuting arrangement for the duration of the website development, the email submitted by Pushor suggests that the Observatory expected Pushor to return to New Hampshire once the website launched. While the Observatory's actions were voluntary, it is difficult to see how, by allowing Pushor to work from Maine, the Observatory was invoking the benefits and protections of Maine's law. *A Corp.*, 812 F.3d at 59. Cases like *Cossart, Brian Jackson*, and *Suttie,* where the plaintiffs were able to show that employment in the plaintiff's home state was at least in part for the benefit of the defendant's employer, are distinguishable from this case.

Finally, Pushor asserts that because the Observatory complied with Maine employment tax obligations, it was foreseeable to the Observatory that it was exposing itself to a lawsuit in Maine. Pushor cites no authority that the payment of employment taxes within Maine is alone sufficient to create the minimum contacts

---

[8]     There are three problems with his assertion. First, as support, Pushor cites paragraph 19 of the Complaint, which states only: "In or around Spring 2013, Pushor began working full time from his home in Falmouth, Maine." Compl. ¶ 19. Second, even if Complaint did make the assertion of a benefit to the Observatory, the Plaintiff's burden is to produce evidence outside the Complaint. *Boit v. Gar-Tec Prod., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) (for prima facie showing of personal jurisdiction the plaintiff must go beyond the pleadings and make affirmative proof). And third, even when I hunt for evidence to support the claim, I fail to find it. Pushor avers that his supervisor "recognized that I would not be able to accomplish all of my IT duties if I was still required (for truly no reason at this point) to commute to Mount Washington." Pushor Aff. ¶ 4 (ECF No. 8-4). I do not think that this paragraph supports the Plaintiff's claim that the Observatory benefitted from Pushor working at home. As previously noted, commute time is not compensable worktime. *See* Def.'s Reply 2 n.1. To the extent that Pushor's affidavit can be interpreted to suggest that there was some benefit for the Observatory, I reject it as a farfetched inference. *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

14

necessary with the forum. Instead, Pushor asks the rhetorical question: "Would the Observatory argue that it was not subject to tax enforcement in Maine courts because Plaintiff Pushor's relocation was not it's [sic] original idea?" Pl.'s Opp'n 6. Perhaps if this were a case for non-payment of Maine taxes, the contact of paying state taxes alone would be a specific enough connection to find jurisdiction.[9] But here, on an undefined overtime claim, the fact that the Observatory paid the taxes does not establish the minimum contacts necessary.

On the record before me, I cannot say that the Observatory reaped any benefit from allowing Pushor to work from Maine. Nor can I say that because the Observatory acquiesced to the employment arrangement and paid employment taxes in Maine it should have foreseen that it could be called into Maine to defend an overtime dispute. While it is possible that there is an argument that recruiting and utilizing Maine "talent" should come at the price of exposing an entity to litigation in Maine, that is not the argument that Pushor is making. Nor is it an argument that he could make on facts presented here.

Because the benefit of the work-from-home arrangement accrued only to the Pushor, because the Observatory did not initiate the arrangement but merely acquiesced to it, and because Pushor has failed to develop an evidentiary record that establishes anything more than permitting him to work from home and paying forum-

---

[9]     Ironically, the case that introduced the "minimal contacts" approach for personal jurisdiction involved a state's attempt to collect unpaid unemployment taxes from an out-of-state company that had a sales force within the forum state. *Int'l Shoe Co.*, 326 U.S. at 310. As the Supreme Court said in *International Shoe*, "[t]he activities which establish [International Shoe's] 'presence' subject it alike to taxation by the state and to suit to recover the tax." *Id*. at 321.

state employment taxes, I conclude that the purposeful availment prong has not been satisfied.

### C.    Reasonableness

Because the Plaintiff has failed to establish that the Defendant purposefully availed itself of a Maine forum, I do not need to analyze the issue of reasonableness.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the motion to dismiss.

SO ORDERED.

/s/  Nancy Torresen
United States Chief District Judge

Dated this 17th day of May, 2018.

16